# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Virginia M. Kendall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 8986 | **DATE** | 8/10/2012 |
| **CASE TITLE** | First Merit Bank vs. Grasso | | |

**DOCKET ENTRY TEXT**

MOTION by Defendants Dennis Ahrens, Albert L Grasso, Mohammed H Mirza for leave to file Affirmative Defense Instanter and, MOTION by Defendants Dennis Ahrens, Albert L Grasso, Mohammed H Mirza for extension of time to file response/reply as to motion for summary judgment [25] is denied. Defendants' response to the motion for summary judgment [22] is due on 8/24/12. Plaintiff's reply 9/7/12. Ruling will be made by mail.

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

After Borrower Samir Woodfield, LLC allegedly failed to make payments on certain loan obligations, Plaintiff First Merit Bank ("Plaintiff") brought suit against LLC members Albert L. Grass, Dennis Ahrens, and Mohammed H. Mirza (collectively "Defendants") for breach of Guaranty. Defendants now move to file an affirmative defense instanter ("the Motion"). Plaintiff opposes the Motion on both procedural and substantive grounds. Because the Motion alleges an affirmative defense that would be barred under the Illinois Credit Agreement Act, Defendants' Motion is denied.

Granting or denying a motion for leave to file an amended pleading is a matter purely within the sound discretion of the district court. *See J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 935 F.2d 815, 819 (7th Cir. 1991) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). A proposed affirmative defense must be capable of withstanding a challenge under Rule 12(b)(6); "in other words, if it is impossible for defendants to prove a set of facts in support of the affirmative defense that would defeat the complaint, the matter must be stricken as legally insufficient." *Renalds v. S.R.G. Rest. Group*, 119 F. Supp. 2d 800, 802 (N.D. Ill. 2000) (citing *Heller Fin., Inc. v. Midwhey Powder Do.*, 880 F.2d 1286, 1294 (7th Cir. 1989).

Section 2 of the Illinois Credit Agreement Act ("the ICAA") prevents debtors from "maintaining an action on or in any way related to a credit agreement unless the credit agreement is in writing, expresses an agreement or commitment to lend money or extend credit or delay or forbear repayment of money, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." 815 ILCS 160/2 (West 1998) (emphasis added). Section 3 of the ICAA agreements to modify or amend, including to forbear from exercising remedies or extend payment terms, does not give rise to a claim,

counterclaim or defense that a new credit agreement has been created, unless the agreement satisfies the requirements of Section 2 of the ICAA. See 815 ILCS 160/3 (West 1998).

In furtherance of its prospective affirmative defense, Defendants seek to introduce evidence of an oral agreement whereby Plaintiff agreed to forgive Defendants' deficiency on this mortgage loan if Defendants agreed to take other affirmative steps, including selling the property at issue as well as paying off an additional loan between the parties. Because the agreement at issue in this case involved the complete forgiveness of debt, argue Defendants, the agreement does not "forbear and delay" a debtor's obligation and the ICAA does not apply. Defendants' argument relies heavily on the 1993 district court decision *Whirlpool Financial Corp. v. Sevaux*, 866 F.Supp. 1097 (N.D. Ill. 1994) (*"Whirlpool I"*). The *Whirlpool I* court analyzed the ICAA and allowed evidence of the oral agreement forgiving the defendant's debts because the absence of the word "forgive" in the statute was proof that that the ICAA was not intended to regulate oral agreements forgiving debts.

Defendants' reliance upon *Whirlpool I* is misplaced. First, decisions of sister district courts in this district are not binding on this Court. *Townsel v. DISH Network*, 668 F.3d 967, 970 (7th Cir. 2012) ("[D]istrict courts' decisions are not authoritative, even in the rendering district (other district judges may disagree). It takes an appellate decision to resolve a legal question – and then only within the circuit's territory. . ."). Second, even the *Whirlpool I* court acknowledged that the decision had been made in a precedential vacuum, when little case law existed to provide "insight into the ICAA's definitions and terms." *Id.* at 1099. At the same time as the *Whirlpool I* decision, the 7th Circuit found the ICAA to broadly apply to situations other than those specifically contemplated in the statute. *See Resolution Trust Corp. v. Thompson*, 989 F.2d 942 (7th Cir.1993). In *Thompson*, as here, the original lender on a note was alleged to have orally agreed to forgive the defendant debtor's unpaid obligations. *Id.* at 943. The *Thompson* court held that the oral agreement was barred under the ICAA, adding that such a broad interpretation furthered the statutory purpose of the ICAA which, in the Court's words, was to "impose a strong form of the Statute of Frauds - strong because, unlike the Statute of Frauds, it requires that the agreement itself be signed, and by both parties - on business loans made by financial institutions." *Id.* at 944.

In reliance on Thompson, a subsequent district court decision held the ICAA applicable to oral agreements regardless of whether the agreement concerns delay, forbearance, or forgiveness of a debtor's obligations. *See Westinghouse Elec. Corp. v. McLean*, 938 F. Supp. 487, 489 (N.D. Ill. 1996) (Coar, J.). The *Westinghouse* court excluded evidence of the oral agreement in reliance on *Thompson's* guidance to interpret the ICAA broadly. The *Westinghouse* court distinguished *Whirlpool I* as "hyper-technical and inconsistent with the admonition to construe the statute broadly." *Id.*

This Court agrees with the reasoning of the district court in *Westinghouse*. In addressing unsigned or oral credit agreements, federal and Illinois courts have uniformly interpreted the ICAA as a more stringent version of the Statute of Frauds. *See, e.g., Help At Home, Inc. v. Med. Capital, LLC*, 260 F.3d 748, 755 (7th Cir. 2001) (agreements are invalid unless both parties' signatures appear on same

| STATEMENT |
|---|

agreement); *Employee Co., Ltd. v. Fifth Third Bank*, 2012 WL 686704 (N.D. Ill. March 1, 2012) (Holderman, J.) (the ICAA is to be construed broadly to prohibit all claims arising from alleged extra-contractual representations, omissions or conduct in a credit relationship); *Household Commercial Fin. Services Inc. v. Suddarth*, 2002 WL 31017608 (N.D. Ill. Sept. 9, 2002) (the ICAA bars all actions that are in any way related to an oral credit agreement, whether those actions sound in contract or tort); *McAloon v. Northwest Bancorp, Inc.*, 654 N.E.2d 1091 (Ill. App. Ct. 1995) (court barred all claims and defenses founded on alleged oral representations by bank to lend money).

Given that the ICAA consistently has been enforced as something stronger than the Statute of Frauds, that purpose would be greatly hampered if agreements discussing delay or forbearance must be in writing, yet agreements forgiving the debt altogether can still be oral. Because the oral agreement in question would be barred by the Illinois Credit Agreement Act, the affirmative defense in question would not survive Plaintiff's motion to dismiss, and Defendants' leave to file is denied.